UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DERREON L. BAKER,

               Plaintiff,                     CIVIL ACTION NO. 06-12530

               v.                          DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF                  MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

     This Social Security case comes before the court on the parties' cross-motions for summary judgment.  For the reasons stated below, the court recommends that the Commissioner's motion be **GRANTED** and that plaintiff's motion be **DENIED**.

### II.  Background

     Plaintiff Derreon Baker is a minor child.  On June 18, 2003, Shatina Grady, plaintiff's mother, filed an application for Supplemental Security Income (SSI) on his behalf.  Tr. 34-37.  Ms. Grady alleged that plaintiff was disabled as of June 1, 2003, due to attention span deficits, hyperactivity, and emotional problems.  Tr. 40.  Plaintiff was seven years of age at the time of the filing.

The Social Security Administration (SSA) denied the claim on September 3, 2003.  Tr.
21-25.  Ms. Grady then requested a hearing before an Administrative Law Judge (ALJ).  Tr. 30.
On October 21, 2004, Ms. Gray and plaintiff appeared, with counsel, at a hearing before ALJ
Bennett S. Engleman.  Tr. 99-112.

On January 12, 2006, the ALJ issued a decision denying the claim.  Tr. 10-20.  The ALJ
determined that plaintiff had not engaged in substantial gainful activity since his alleged
disability onset date.  Further, the ALJ found that plaintiff had a learning disorder and attention
deficit hyperactivity disorder (ADHD), and that his impairments were "severe" within the
meaning of 20 C.F.R. § 416.924(c), but that he did not have an impairment or combination of
impairments that met, medically equaled, or functionally equaled any impairment listed in
Appendix 1 of the Social Security Regulations, 20 C.F.R. Pt. 404, Subpt. P., App. 1.
Accordingly, the ALJ concluded that plaintiff was not "disabled" within the meaning of the
Social Security Act.

Plaintiffs filed a request for review of the ALJ's decision with the SSA's Appeals
Council.  (Tr. 8).  The Council denied the request on April 13, 2006.  Tr. 4-6.  The ALJ's
decision thus became the final determination of the Commissioner.  On June 6, 2006, plaintiff
filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).
As noted above, the matter comes before the court on the parties' cross-motions for summary
judgment.  Plaintiff claims that the ALJ's disability determination is not supported by substantial
evidence.  He requests that the determination be reversed and that the matter be remanded to the

Commissioner for an award of benefits.  The Commissioner argues, conversely, that the

determination is supported by substantial evidence and must therefore be affirmed.

**III.  Legal Standards**

      **A.  Disability Evaluation**

      The Social Security Act provides that a person under the age of 18 "shall be considered

disabled...if that individual has a medically determinable physical or mental impairment, which

results in marked and severe functional limitations, and which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 1382c(a)(3)(C)(i).  A three-step, sequential evaluation process is used to

determine SSI claims involving minors.  That process, which is set forth at 20 C.F.R. §

416.924(a), is as follows:

> We follow a set order to determine whether you are disabled.  If
> you are doing substantial gainful activity, we will determine that
> you are not disabled and not review your claim further.  If you are
> not doing substantial gainful activity, we will consider your
> physical or mental impairment(s) first to see if you have a
> combination of impairments that is severe.  If your impairment(s)
> is not severe, we will determine that you are not disabled and not
> review your claim further.  If your impairment(s) is severe, we will
> review your claim further to see if you have an impairment(s) that
> meets, medically equals, or functionally equals the listings.  If you
> have such an impairment(s), and it meets the duration requirement,
> we will find that you are disabled.  If you do not have such an
> impairment(s), or if it does not meet the duration requirement, we
> will find that you are not disabled.

**B.  Judicial Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's

findings are supported by substantial evidence and whether the ALJ applied the proper legal

standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan,

109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that

"[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance

and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion. Further, "the decision of an ALJ is not subject to reversal, even if there is substantial

evidence in the record that would have supported an opposite conclusion, so long as substantial

evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV.  Analysis**

As indicated above, the ALJ concluded that plaintiff's impairments did not meet,

medically equal, or functionally equal a listed impairment.  Plaintiff raises no objections to the

ALJ's conclusion that his impairments do not meet or medically equal a listed impairment, but

contends that the ALJ erred in determining his impairments do not functionally equal a listed impairment.

If a claimant's impairments do not meet or medically equal a listed impairment, the claimant may still be found to be disabled if his impairments functionally equal a listed impairment. Six "domains" are examined in determining whether an impairment or combination of impairments functionally equals a listed impairment: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a. The regulations provide that in order for an impairment or combination of impairments to functionally equal a listed impairment, "it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." Id. A "marked limitation" is defined as follows in § 416.926a(e)(2):

> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked limitation" also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

The regulations define "extreme limitation" as follows:

> We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities.

-5-

> Your day-to-day functioning may be seriously limited when your
> impairment(s) limits only one activity or when the interactive and
> cumulative effects of your impairment(s) limit several activities.
> "Extreme" limitation also means a limitation that is "more than
> marked."  "Extreme" limitation is the rating we give to the worst
> limitations.  However, "extreme limitation" does not necessarily
> mean a total lack or loss of ability to function.  It is the equivalent
> of the functioning we would expect to find on standardized testing
> with scores that are at least three standard deviations below the
> mean.

20 C.F.R. § 416.926a(e)(3).

The ALJ concluded that plaintiff had no limitations in the domains of health and physical

well-being, moving about and manipulating objects, and caring for oneself.  The ALJ further

determined that plaintiff had less than marked limitations in the domains of acquiring and using

information, attending and completing tasks, and interacting and relating with others.  Tr. 17-19.

Plaintiff contends that the ALJ's findings in the latter three domains are not supported by

substantial evidence.  He claims that he has extreme limitations in at least one of these domains

or, alternatively, marked limitations in at least two of these domains.

### A.  Attending and Completing Tasks

The domain of attending and completing tasks involves consideration of "how well you

are able to focus and maintain your attention, and how well you begin, carry through, and finish

activities, including the pace at which you perform activities and ease with which you change

them."  20 C.F.R. § 416.926a(h).  The regulations set forth several examples of limited

functioning in this area:

> (i) You are easily startled, distracted, or overreactive to sounds,
> sights, movements, or touch.

-6-

(ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.

(iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.

(iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.

(v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(h)(3).  Further, a child of plaintiff's age should generally able to do the following:

When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments.  You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments).  You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate.  You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores.  You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).

There is evidence in the record that plaintiff has difficulty maintaining concentration at school, that he is easily sidetracked, and that he requires extra supervision to keep him engaged. Dr. Terence Joiner, M.D., a treating physician, diagnosed plaintiff with ADHD and noted in a questionnaire dated August 1, 2003, that plaintiff had a very short attention span.  Tr. 74-82.

-7-

Lisa Murray, one of plaintiff's elementary school teachers, reported on March 1, 2004 that plaintiff "has difficulty staying focused on his school work.  He frequently gets distracted by a thought or activity and appears to get 'lost' in it."  Tr. 73.  She also stated that plaintiff had difficulty getting himself back on task.  Id.  In a subsequent questionnaire, Ms. Murray stated that plaintiff (1) "has a short attention span that requires me to repeat directions, stand near him and monitor his progress closely," (2) "[h]e is easily distracted and has a hard time getting himself back on task," (3) "[h]e gets involved with other students 'business' when he should be working," and (4) [h]e moves around the room a lot."  Tr. 92.  Similarly, in a report dated November 4, 2005, Elizabeth Wilkinson, one of plaintiff's fourth grade teachers indicated that plaintiff was easily distracted in the classroom and that he had difficulty completing tasks.  Tr. 94-95.  Consistent with these reports, plaintiff's mother testified that plaintiff exhibited concentration difficulties at home, such as an inability to stay focused on his homework.  Tr. 104-05.  Based on this evidence, there is little question that plaintiff has significant limitations in the domain of attending and completing tasks.

Nonetheless, the court concludes that there is sufficient evidence in the record to support the ALJ's determination that plaintiff was less than markedly limited in this domain.  Most significantly, Dr. V. Domino, the only medical professional to rate the severity of plaintiff's limitations in each of the six domains, concluded that plaintiff had less than marked limitations in the domain of attending and completing tasks.  Tr. 87.[1]  There is other evidence in this rather

_____

[1]In arguing that he has marked or extreme limitations in this area, plaintiff places much reliance on the January 24, 2006, Psychoeducational Evaluation Report of David Kelley.  Plaintiff's Brief, at p. 6.  Plaintiff's reliance on this report is misguided for two reasons.  First,

sparse record supportive of the ALJ's decision.   In her March 1, 2004 letter, Ms. Murray indicated that she had noticed an improvement in plaintiff's ability to stay at his desk and that he was no longer wandering around the room as much as he had in the fall.  Tr. 73.  Ms. Murray further indicated in her April 11, 2004 report that the medication plaintiff was taking made "a big difference in his ability to stay focused."  Tr. 93.[2]  Plaintiff's mother acknowledged at the hearing that plaintiff's concentration and attention improved once he began taking medication for his ADHD and that the medication had "calmed [him] down some."  Tr. 104.  Further, in the SSI application, dated August 18, 2003, plaintiff's mother recounted the  concentration and attention difficulties plaintiff had been having, but concluded with the remark that he "is now taking medication for ADHD[,] so behavior is starting to get better."  Tr. 60.

        While the evidence in the record might reasonably lead to the conclusion that plaintiff is markedly impaired in the domain of attending and completing tasks, it is not the court's role to make that determination in the first instance.  See Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir. 1987)(In reviewing disability determination, "the court may not try the case de novo, resolve conflicts in the evidence, nor decide questions of credibility.").  Rather, it is the function of the ALJ to resolve any conflicts in the evidence, and as long as there is substantial evidence in the record to support the ALJ's determination, it must be affirmed on judicial review.  See Key,

_____

the report, is nowhere to be found in the record before the court.  Second, the report was issued after the ALJ rendered his decision.  It is well settled that evidence presented after the ALJ has rendered his decision cannot be considered part of the record for purposes of substantial evidence review.  See, e.g., Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).  For these reasons, the report plaintiff relies upon has no bearing on the court's consideration of this matter.

        [2]Dr. Joiner prescribed Adderall for plaintiff on June 30, 2003.  Tr. 74.

supra, 109 F.3d at 273.  Based on the opinion of Dr. Domino and the evidence indicating that

medication has improved plaintiff's condition, the court concludes that there is substantial

evidence in the record to support the ALJ's determination that plaintiff has less than marked

limitations in the domain of attending and completing tasks.

### B.  Acquiring and Using Information

The domain of acquiring and using information involves consideration of "how well you

acquire or learn information, and how well you use the information you have learned."  20

C.F.R. § 416.926a(g).  Section 416.926a(g)(3) cites the following examples of limitations in this

domain:

> (i) You do not demonstrate understanding of words about space,
> size, or time; e.g., in/under, big/little, morning/night.
>
> (ii) You cannot rhyme words or the sounds in words.
>
> (iii) You have difficulty recalling important things you learned in
> school yesterday.
>
> (iv) You have difficulty solving mathematics questions or
> computing arithmetic answers.
>
> (v) You talk only in short, simple sentences and have difficulty
> explaining what you mean.

The regulations further provide that a child of plaintiff's age should be able to do the following:

> When you are old enough to go to elementary school and middle
> school, you should be able to learn to read, write, and do math, and
> discuss history and science.  You will need to use these skills to
> demonstrate what you have learned; e.g., by reading about various
> subjects and producing oral and written projects, solving
> mathematical problems, taking achievement tests, doing group
> work, and entering into class discussions.  You will also need to

> use these skills in daily living situations at home and in the
> community (e.g., reading street signs, telling time, and making
> change).  You should be able to use increasingly complex language
> (vocabulary and grammar) to share information and ideas with
> individuals or groups, by asking questions and expressing your
> own ideas, and by understanding and responding to the opinions of
> others.

20 C.F.R. § 416.926a(g)(2)(iv).

There is evidence in the record indicating that plaintiff has considerable limitations in this domain.  Plaintiff was held back in school following his second grade year and spent another year in second grade due to "immaturity."  Tr. 74.  Dr. Joiner indicated in his August 1, 2003 report that plaintiff's ability to learn was "very impaired."  Tr. 82.  Further, during his second year in second grade, plaintiff was still reading at a mid-first grade level according to Ms. Murray.  Tr. 92.  Plaintiff's mother confirmed at the hearing that plaintiff continued to struggle with his reading.  Tr. 112.

On the other hand, Dr. Domino concluded that plaintiff had less than marked limitations in this domain.  Tr. 87.  In addition, plaintiff has never been enrolled in any special education classes.  Tr. 58, 92, 94, 109.  In the SSI application, plaintiff's mother indicated that plaintiff could ask and answer "who, what, why, and where" questions, that he used complete sentences when speaking, and that his speech could be understood most of the time by both persons familiar with him and persons not familiar with him.  Tr. 60.  Plaintiff's mother also informed Dr. Joiner on June 30, 2003 that plaintiff had "actually been doing fairly well at school."  Tr. 74.  Further, Ms. Murray reported on April 11, 2004 that plaintiff was functioning at his grade level in mathematics and that his speech was normal.  Tr. 92-93.  Ms. Wilkinson reported on

-11-

November 4, 2005 that plaintiff  "can communicate although it is sometimes rapid-fire or in an exasperated tone."  Tr. 95.

In sum, while a reasonable finder of fact might conclude upon this relatively scant record that plaintiff is markedly impaired in the area of acquiring and using information, the ALJ reasonably resolved the conflicts in the evidence in concluding that plaintiff has less than marked limitations in this domain.  The court concludes that the ALJ's determination is supported by substantial evidence.

### C.  Interacting and Relating With Others

The domain of interacting and relating with others involves consideration of "how well you initiate and sustain emotional connections with others, develop and use the language of your community, co-operate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.  20 C.F.R. § 416.926a(i).  The following are examples of limited functioning in this area:

> (i) You do not reach out to be picked up and held by your caregiver.

> (ii) You have no close friends, or your friends are all older or younger than you.

> (iii) You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.

> (iv) You have difficulty playing games or sports with rules.

> (v) You have difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance.

-12-

20 C.F.R. § 416.926a(i)(3).  Further, a child of plaintiff's age should be able to do the following:

> When you enter school, you should be able to develop more lasting
> friendships with children who are your age.  You should begin to
> understand how to work in groups to create projects and solve
> problems.  You should have an increasing ability to understand
> another's point of view and to tolerate differences.  You should be
> well able to talk to people of all ages, to share ideas, tell stories,
> and to speak in a manner that both familiar and unfamiliar listeners
> readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

Plaintiff undoubtedly has difficulties interacting with others.  His mother reported that he

has had difficulty getting along with his older sister and peers, and that he has an quick temper.

Tr. 58, 78, 109-110.  Dr. Joiner noted in his August 1, 2003 report that plaintiff had "poor peer

relationships" and had "trouble interacting with others."  Tr. 83.  Ms. Wilkinson stated that

plaintiff had difficulty "keeping his hands to himself and respecting the space of others."  Tr. 94.

Ms. Wilkinson also stated that plaintiff was "sometimes impatient or too physical with other

kids."  Tr. 95.  In an incident report dated October 14, 2005, Ms. Wilkinson stated that plaintiff

hit and slapped two girls while returning to her classroom from his art class.  Tr. 97.  In

December, 2005, plaintiff apparently threw a pair of scissors at a classmate.  Tr. 98.  This

evidence suggests that plaintiff has substantial difficulties getting along with others.

However, as with the other domains, there is contradictory evidence in the record.  Dr.

Domino concluded that plaintiff was less than markedly impaired in the domain of interacting

and relating with others.  Tr. 87.  Ms. Murray found plaintiff to be a "cooperative, pleasant child

to have in class."  Tr. 73.  She also indicated that plaintiff was "not aggressive in an extreme

manner," and that while he had some difficulty getting along with his peers, he was generally

"fairly quiet and cooperative."  Tr. 92.  Moreover, plaintiff's mother and teachers indicated that

plaintiff had no significant verbal communication difficulties.  Tr. 60, 92-93, 95.

Thus, there is evidence that cuts both ways in the domain of interacting and relating with

others.  While a different conclusion might have been reached, the court cannot say that the ALJ

acted unreasonably in determining that plaintiff is less than markedly limited in this domain.

The court concludes that the ALJ's determination is supported by substantial evidence.

## V.  Conclusion

In sum, the court concludes that the record supports the ALJ's determination that plaintiff

does not have marked limitations in two domains or extreme limitations in one domain and,

therefore, that plaintiff's impairment does not functionally equal a listed impairment.

Accordingly, the court recommends that the Commissioner's motion for summary judgment be

**GRANTED** and that plaintiff's cross-motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

-14-

1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

magistrate judge.

      Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address

each issue contained within the objections specifically and in the same order raised.

<u>S/Virginia M. Morgan</u>
United States Magistrate Judge

Dated: January 18, 2007

---

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 18, 2007.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan